## GUICE v. LAWRENCE, Syndic.

The husband as head and master of the community may alienate *à titre onéreux* the immovables of which it is composed, without the consent of his wife. The laws of Louisiana, like those of Spain, recognize no title in the wife, during marriage, to any part of the *acquêts;* she becomes the owner of one-half, only after the dissolution of the marriage. C. C. 2373.

A voluntary surrender of property, made by the husband to his creditors, becomes, after acceptance, an alienation of the property, vesting the title thereto in his creditors; and, where the property surrendered was acquired during marriage, the proceeds must go to the payment of the debts proved in the *concurso,* giving the preference to those contracted during the community (stat. 29 March, 1826, § 2); and where the community is dissolved by the death of the husband after the surrender, the wife will preserve only her recourse against the syndic, for one-half of any balance remaining in his hands after payment of all the debts.

Where property belonging to the community of *acquêts* has been alienated by the husband in fraud of the rights of the wife, the only recourse given to her by art. 2373 of the Civil Code is against the heirs of the husband after the dissolution of the marriage.

APPEAL from the District Court of Concordia, *Curry,* J.

The petitioner represented that, in August, 1839, she was married to one Smalley, and that the parish of Concordia was their matrimonial domicil. That, in the autumn of 1840, *Smalley* purchased one thousand acres of land of the United States, at the public sales at Monroe, partly in the name of the petitioner and partly in his own name, for the price of $1 25 per acre : That, in March, 1841, he made a surrender of his property, when the defendant was appointed his syndic ; and that, in May following, he died : That he surrendered to his creditors the lands acquired by the community, and that they were sold for $8,000, or $10,000 ; That she has accepted the community existing between her husband and herself, and has demanded of the syndic to be placed on the tableau as entitled to one-half of the nett proceeds of the community property, after deducting the debts contracted during its existence : The petition avers that the defendant refuses to recognize her as entitled to any thing, until all the debts of *Smalley* are paid. She prays that she may be placed on the tableau for one-half of the proceeds of the community property, subject to the payment of one-half of the community debts.

The syndic denied her right to be placed on the tableau for any sum whatever: 1st, Because *Smalley's* debts are more than sufficient to consume the whole of the property surrendered: 2d, Because the property surrendered was mortgaged for more than its value before the surrender, and said mortgages must be first paid: 3d, Because the debts contracted during the community must be paid before any thing can be appropriated to the petitioner, and they are more than sufficient to consume the property.

It appears from a statement of facts made by the counsel of the parties, that Smalley was married in Mississippi, in August, 1839, and that he purchased lands as alleged in the petition; that he made a surrender of his property to his creditors, in March, 1841, which was accepted, and the defendant appointed syndic, and that *Smalley* died in May following; that the largest part of *Smalley's* debts was contracted before his marriage; that judgments were obtained on some of them after the marriage, and legal mortgages acquired subsequent to the marriage and before the surrender; that ordinary debts were contracted during the

marriage; that *Smalley's* wife brought no property into the marriage, and had nothing; that their matrimonial domicil was in Louisiana; that the lands sold for between $8,000 and $10,000; that the legal mortgages were for more than the property surrendered, and were acquired subsequently to the marriage, but were, for the most part, founded on debts contracted previously thereto. There was a judgment below rejecting the demand of the plaintiff, from which she appealed.

*Rowly*, *Frost* and *Sanders*, for the appellant. The plaintiff's pretensions are based on the following propositions: 1st, That the community property, after the payment of its debts, is to be equally divided between the parties. C. C. art. 2372. 2d, That the husband cannot validly surrender the wife's portion, for the payment of his private debts contracted prior to the marriage. Civ. Code, art. 2373. 3d, That a surrender is not an alienation, but a pledge. C. C. arts. 2171, 2174, 2176. 2 Rob. 193. 4th, That the wife has a right to attack any alienation or encumbrance made by the husband to her injury. 5th. That the action which she may exercise against the heirs of the husband is a cumulative remedy, and does not preclude her from claiming the property itself. 2 Mart. N. S. 573. 4 La. 192. 9Ibid, 583.

The old Code gave the husband express power to give away the community property. The new Code expressly forbids it. Code of 1808, p. 336. The community is but a civil partnership, of which the husband is the active partner. In any other partnership, would one partner be allowed to pay his individual debts out of the partnership funds, to a creditor who had notice. The Code of Practice gives her the power to prevent sales by the husband to her prejudice. C. P. art. 298. The judgment should be reversed, and the syndic ordered to place the plaintiff on the tableau for one-half of the surplus of the community property after the payment of its debts. The syndic contends that, among the community debts, should be included certain judgments rendered against *Smalley* during his marriage, but on debts contracted previously. We cannot so understand the law. The date of the *debt*, not of the *judgment*, fixes its character. A pre-existing debt is not a valuable consideration for a sale, as against creditors. Why should not the rule apply here?

*Perkins*, on the same side.

*Shaw* and *Lawrence*, for the defendant, as to the first position of plaintiff's counsel, contended that art. 2372 must be construed with art. 2378. As to the second portion, they cited 9 Rob. 210–219. As to the third, they alleged that though the surrender be considered as a pledge, it cannot better the plaintiff's position. 2 Rob. 193. C. C. art. 3124. Bul. and Curry's Dig. 495. The fourth position they contended was erroneous. Under art. 2373 the remedy of the wife is not to annul the alienation, but against the heirs. The rights and position of creditors cannot be changed by the fortuitous event of *Smalley's* death, subsequent to the surrender. *Actus Dei nemini facit injuriam.* Were *Smalley* alive, his widow could insist upon no claim whatever, and his death does not alter her position in this respect. C. C. arts. 2126, 2176. 11 La. 438. B. & C. Dig. 492.

The judgment of the court was pronounced by

ROST, J. The plaintiff married one *Abner Smalley* in the State of Mississippi. She had no property, and *Smalley* was much in debt. They came to Louisiana, and, a few months after,*Smalley* bought at public sale, from the United States, one thousand acres of land, partly in his own name and partly in the name of the plaintiff, and paid for it. His creditors pursued him in Louisiana, and obtained against him judgments, which were duly recorded after the purchase of the lands. In consequence of those judgments, *Smalley* made to all his creditors, in March, 1841, a voluntary surrender of his property, which was accepted by them. They appointed a syndic, and, in the month of May following the surrender, *Smalley* died. There are some debts due by the community; but the larger portion were due by him previous to his marriage. The proceeds of the sale of the lands are not sufficient to pay the amounts of the judgments recorded against him. The plaintiff, who has accepted the community, now asks to be placed on the tableau for one-half of the nett proceeds of the land, after deduct-

GUICE
v.
LAWRENCE.

ing the community debts, on the ground that she was half owner of the community property, and that her share cannot be taken to pay the debts of her husband, anterior to marriage.    The judge of the court below refused her application, and she appealed.

The laws of Louisiana have never recognized a title in the wife during marriage, to one-half of the acquêts and gains.    The rule of the Spanish law on that subject, is laid down by Febrero with his usual precision.    The ownership of the wife, says that author, is revocable and fictitious during marriage.    As long as the husband lives and the marriage is not dissolved, the wife must not say that she has *gananciales*, nor is she to prevent the husband from using them, under the pretext that the law gives her one-half.    But, *soluto matrimonio*, she becomes irrevocably the owner of one undivided half, in the manner provided by law for ordinary joint ownership.    The husband is, during marriage, *real y verdadero dueño de todos, y tiene en el efecto de su dominio irrevocable*.    Febrero Adic., tomo 1 y 4, part 2d, bk. 1st, chap. 4, parag. 1, nos 29 and 30.    Pothier, Communauté, p. 35 and following.    12 Toullier, chap. 2, nos. 72 to 31.    14 Duranton, Droit Franc. p. 281 and foll.    10 Dalloz, Jurisp. p. 198 and fol.

The provisions of our Code on the same subject are the embodiment of those of the spanish law, without any change.    The husband is head and master of the community, and has power to alienate the immovables which compose it by an encumbered title, without the consent or permission of his wife.    Civil Code, art. 2373.    The voluntary surrender of his property by *Smalley* to his creditors, became him, after acceptance, such an alienation.    Under the express provisions of the act of 1826, he was absolutely divested of the title, and his creditors were vested with it.    2d Moreau's Dig. p. 437.

If this alienation can be considered as made in fraud of the rights of the wife, the only recourse which the above article gives her is, against the heirs of her husband *after the dissolution of the marriage*.    In the case cited from 9th La. the alienation complained of, took place after the title of the wife had become irrevocable, by the dissolution of the marriage.    We agree fully with the opinion delivered by judge Bullard on that occasion, and consider it, as far as it goes, a correct exposition of the law on the subject.    With the reasoning of the court in 4th La. we cannot agree; although the conclusion to which they came, may have been correct on other grounds.    The difference supposed by the court to exist between our Code and that of France, is imaginary.    Under both, cases of fraud are excepted from the general power given to the husband to alienate the acquêts and gains.    See 7th Sirey, 1st sect. p. 401.    The proviso of art. 2373 cannot be construed as giving or recognizing a title to or in the wife.    As well might it be said that children have a title in the property of their father, because he is prohibited from disposing of it in fraud of their *légitime*.    *Dixon* v. *Dixon*, 4 La. 188.

The plaintiff had not applied for a separation of property, and could not have obtained it, as she brought nothing into marriage, and appears to have had no separate avocation of any kind.    The surrender was, after acceptance, an alienation, by which she is bound.    The proceeds of the land must go to the payment of the debts proved *in concurso*, giving the preference to those contracted during the community, and reserving to the plaintiff her rights against the syndic for one-half of any balance in his hands after the payment of all the debts, and also the rights she may have against the heirs of her husband, under art. 2373 of the Civil Code,

For the reasons assigned, it is ordered that the judgment in this case be amended, so as to reserve to the plaintiff her right to one half of any balance remaining in the hands of the syndic after payment of all the debts, and also any rights she may have against the heirs of her husband under art. 2373 of the Civil Code. It is further ordered, that the judgment as amended be affirmed, with costs.